IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MENERICK and AMY MENERICK, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. ___1:23CV10___ |
| SALEM HERITAGE, LLC, GREG HUNTER, and MATT McFATTER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs Christopher Menerick and Amy Menerick ("Plaintiffs" or "Menericks"), for their Complaint against Salem Heritage, LLC ("Salem Heritage"), Greg Hunter ("Hunter"), and Matt McFatter ("McFatter") (together "Defendants") allege and state as follows:

## INTRODUCTION

1.      Christopher and Amy Menerick own a residence located at 410 Stone Mill Road SW, Abingdon, VA 24210 ("the Residence").

2.      Christopher and Amy Menerick hired Defendants to perform window restoration work at the Residence.

3.      Defendants' negligent, faulty, and poorly performed workmanship caused lead paint and lead paint residue and dust to be distributed throughout the Residence.

4.      Following the restoration work, dangerous and elevated lead levels were detected in the Residence.

5.      Plaintiffs bring the present action for the damages caused by Salem Heritage, Hunter, and McFatter.

## PARTIES

6.      Christopher Menerick is a citizen of the Commonwealth of Virginia, and resides in Washington County, Virginia.

7.      Amy Menerick is a citizen of the Commonwealth of Virginia, and resides in Washington County, Virginia.

8.      Defendant Salem Heritage is a North Carolina limited liability company, and a citizen of North Carolina by virtue of the citizenship of its members, who, upon information and belief, are citizens and residents of North Carolina.

9.      Hunter and McFatter, upon information and belief, are citizens and residents of the state of North Carolina and at all times were acting both individually and as agents of Salem Heritage.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332, which provides diversity jurisdiction, as Plaintiffs and all Defendants are citizens of different states.

11.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2

Abingdon: 1200474-1

12.    Venue properly lies in this judicial district and is proper in accordance with 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the underlying claims took place in the Western District of Virginia, Abingdon Division.

## FACTS

### A.    The Menerick Residence

13.    In 2021, Christopher and Amy Menerick ("the Menericks") purchased the Residence as a primary home for themselves and their minor children.

14.    The Residence is a two-bedroom, four-story brick house built in or around 1828.

15.    There was lead paint in the Residence, and in particular, lead paint was present on the windows that were to be repaired and restored.  This fact was known to the Defendants.

### B.    Salem Heritage, Greg Hunter, and Matt McFatter

16.    Defendant Salem Heritage is a home renovation company whose principal place of business is in Winston-Salem, North Carolina.

17.    Defendant Salem Heritage advertises and holds itself out as a construction company that is qualified and licensed to undertake window renovations, door renovations and fabrications, and shutter renovation and fabrication work.  In particular, Defendant Salem Heritage at all times held itself out as having the ability, the qualifications, the expertise, and the experience to perform window renovation and restoration work in older homes.

18.     Hunter, upon information and belief, is a member of Salem Heritage, and also works as a manager/director.  Hunter met with the Menericks to solicit and secure their business.  Hunter entered into the contract with the Menericks on behalf of Salem Heritage.  McFatter, upon information and belief, is an employee and agent of Salem Heritage, and was a supervisor of the work performed on the Residence.

C.     *Salem Heritage's Work for the Menericks*

19.     In December 2021, the Menericks contacted Defendant Salem Heritage regarding the renovation and restoration of windows at their Residence.

20.     The Menericks and Hunter discussed the needs of the Menericks, the facts regarding the age and condition of the Residence, and the type of restoration work the Menericks were interested in having performed.

21.     The Menericks communicated directly with Hunter during the initial meetings and contacts, and Hunter made representations and warranties about the work to be performed and the capabilities of Salem Heritage and its employees to perform the work.

22.     The parties agreed that the window restoration project would include restoring, repairing, priming and painting the Residence's windows.

23.     The Menericks alerted Defendants to their concerns about exposure to toxic substances such as lead paint given the age of the Residence.

24.     Defendants were advised and were aware that the Menericks and their children lived in the Residence, thus emphasizing the importance of protecting the health of themselves and their children during performance of the renovations.

4

25.     Hunter advised the Menericks that Salem Heritage and its employees were qualified to perform the work safely, that its employee Matt McFatter, aka Matt McFatty, had the expertise to perform the work, and that Hunter would carefully supervise the work at the Residence.

26.     The Menericks and Salem Heritage agreed upon the terms of the contract for Salem Heritage's work, including the scope of the work and the amount that Salem Heritage would charge for its services and work.  Defendant began performance of work at the Residence on or about July 2022.

27.     Defendants' work included weather stripping, re-roping, and glazing windows, applying of a primer coat to the windows, and painting the windows, and repairing the windows to restore their functionality and utility.

28.     On July 19, 2022, Salem Heritage presented an invoice in the amount of $17,771.28 to the Menericks.

29.     On July 29, 2022, the Menericks paid Salem Heritage $17,771.28, which represented the amount of the invoice.

30.     On August 12, 2022, Salem Heritage presented another invoice in the amount of $10,477.04.

31.     The following week, the Menericks paid Salem Heritage the sum of $10,477.04, which represented the amount of the invoice.

32.     Salem Heritage claimed to have completed its work at the Residence and the Defendants' last day on the job was September 7, 2022.  However, the work was

5

not completed, and was not completed properly, and was not completed in a workmanlike

manner, consistent with the representations and warranties made to the Menericks.

### D.    Facts Withheld from the Menericks

33.    Defendants represented to the Menericks that they could safely and

competently, consistent with governing regulations and licensing requirements, complete

the window renovation and restoration work at the Residence.

34.    Upon information and belief, Defendant Salem Heritage was not

qualified to do business in the Commonwealth of Virginia when it contracted with the

Menericks and conducted renovation services at their Residence.  Accordingly, it was

never licensed or permitted by law to perform the work at the Residence.

35.    Defendants never disclosed to the Menericks that they were not

licensed to conduct business in the Commonwealth of Virginia.

36.    Upon information and belief, Defendants were not qualified to do the

renovations that disturbed the painted surfaces when they transacted with the Menericks

and conducted renovation and restoration services at their Residence.

37.    Defendants failed to disclose to the Menericks that they do not possess

the requisite lead certifications.

38.    Defendants did not provide the Menericks with the required Lead-

Safe Certified Guide.

39.    Upon information and belief, Defendants did not hold any

contractor's license in the Commonwealth of Virginia when they transacted with the

Menericks.

40.   Defendants did not disclose that they were not qualified or licensed as contractors in the Commonwealth of Virginia.

*E.    Elevated Lead Levels Identified in the Menericks' Child*

41.   After Defendants left the Residence, the Menericks continued to live in the Residence, and they were thereby exposed to lead dust and debris that was present because of defendants' failure to monitor, address or control the lead dust and debris created by their work.

42.   In August 2022, the Menericks' children were seen by their pediatrician. The children were tested for elevated lead levels.

43.   On August 31, 2022, one of their children's blood test revealed highly elevated lead levels.

44.   On September 5, 2022, the Menerick's pediatrician instructed the Menericks to remove their children from the lead source.

45.   Upon receiving the pediatrician's guidance, the Menericks and all of their children moved out of their Residence.

*F.    Lead Evaluation*

46.   On September 8 and 9, 2022, the Virginia Department of Health visited the Residence to evaluate the lead exposure and the conditions in the Residence.

47.   On September 8 and 9, 2022, the Environmental Intervention Blood Lead Investigation (EIBLI) was performed at the Residence by Bradley Stallard, licensed Lead Risk Assessor.

Abingdon: 1200474-1

48.    The EIBLI was performed pursuant to the U.S. Environmental
Protection Agency 403 Rule, Lead, Identification of Dangerous Levels of Lead, the U.S.
Department of Housing and Urban Development (HUD) Guidelines for the Evaluation and
Control of Lead-Based Paint in Housing, the Virginia Department of Professional and
Occupational Regulation Virginia Lead-Based Paint Activities Regulations, and the U.S.
EPA Model curriculum for Inspection/Risk Assessments.

49.    On October 6, 2022, an EIBLI report was issued which included a
finding that there were lead hazards present in the Residence.

50.    The EIBLI report sets forth the procedures to be followed in the
completion of the lead investigation, details findings, and identifies acceptable remediation
measures.

51.    As part of the investigation, dust wipe samples were collected from
the floor and window sill in each room.

52.    As part of the investigation, soil samples were collected from bare
soils at the Residence.

53.    As part of the investigation, a visual assessment was performed to
identify lead hazards.

54.    As part of the investigation, other sources of exposure other than the
Residence were investigated.

55.    As part of the investigation, paint samples were collected from the
Residence for laboratory testing.

Abingdon: 1200474-1

56.     The EIBLI report identified lead paint hazards in the following locations: all window components tested, exterior paint on top floor dormers, columns on porches, and basement door exterior.

57.     The EIBLI report identified dust lead hazards in the following locations: floors of ground level living room, entry hall, office, ground level bathroom, laundry room, master bedroom, children's bedroom, children's bathroom, camper, and attic. Dust lead hazards were located on window ledges/sills of the following windows: near basement back door, the office, the master bedroom, laundry room, children's bedroom, and children's bathroom.

58.     The EIBLI did not identify any soil lead hazards.

59.     The EIBLI report sets forth recognized lead abatement and control measures and monitoring procedures that the Menericks should follow to avoid additional lead exposure.

*G.     Abatement Measures Taken by the Menericks*

60.     To date, the Menericks have actively taken steps to mitigate the harm caused by Defendants' renovation work.

61.     The Menericks hired Piedmont Paint and Finish, LLC, to conduct lead abatement work consistent with applicable Renovation, Repair, and Painting Rules.

62.     Piedmont Paint and Finish, LLC, is a firm licensed and certified to conduct lead abatement measures and renovations in Virginia.

63.     Piedmont Paint and Finish has estimated the cost of lead abatement work being undertaken at the Residence to be $82,866.00.

9

Abingdon: 1200474-1

## COUNT I – BREACH OF CONTRACT (SALEM HERITAGE)

64.    Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-63 above.

65.    Defendant Salem Heritage and the Menericks entered into a contract for restoration and renovation of windows at the Residence.

66.    Under the contract, Defendant's work involved weather stripping, re-roping, restoring, and glazing the windows; applying of a primer coat to the windows; and painting the Residence's windows.

67.    The Menericks in turn agreed to pay the cost of supplies and services rendered.

68.    The contract included express and implied warranties that Salem Heritage was properly licensed to perform the work represented, that Salem Heritage was qualified and capable of performing the work agreed upon in accordance with governing law and regulation, and that Salem Heritage would perform the contract in a good and workmanlike manner consistent with governing laws and regulations.

69.    In renovating and restoring the windows, Defendants removed, sanded, and stripped old paint from the windows.  This paint contained lead, and upon performing this work, Defendants' work released lead-based paint dust and debris into the air and throughout the Residence.

70.    Defendants failed to follow federal lead-paint rules that govern the renovation/restoration work in houses built before 1978.

10

71.     Defendants failed to perform the contract in accordance with industry standards for the renovation of historic properties in the Commonwealth of Virginia.

72.     Defendants misrepresented their ability and qualifications to undertake renovation work of the type performed in the Commonwealth of Virginia.

73.     Defendants violated their express warranties, and their implied warranty of workmanship, and their contract to perform the work, by failing to exhibit and implement the necessary expertise to perform the work, and failing to obtain the training and licensure necessary to conduct the window renovation project at the Residence.

74.     Salem Heritage thereby breached its contract with the Menericks.

75.     The Menericks have been deprived of benefits expected under the window restoration contract because of Defendant's violation of state and federal law and breach of contract.

76.     The Menericks are entitled to damages directly and proximately caused by the Defendants' breach of contract.

## COUNT II – NEGLIGENCE
### (SALEM HERITAGE, GREG HUNTER, and MATT McFATTER)

77.     Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-76 above.

78.     Defendants owed the Menericks a duty of reasonable care in undertaking the renovation and restoration work at the Residence.

11

79. The Menericks relied on Defendants' claimed expertise and capabilities in performing restoration and renovation work on historic properties in Virginia when it retained the Defendants.

80. Defendants failed to alert Plaintiffs to risks associated with restoration work in a home the age of the Residence and failed to take appropriate steps taken to mitigate those risks.

81. Defendants further breached the standard of care imposed upon home renovation contractors when they failed to follow lead-based paint safety protocols and comply with lead-based paint training and licensing requirements as well as governing state and federal regulations.

82. Defendants further breached the standard of care by failing to take steps to shield Plaintiffs' properly from dust and debris released into the atmosphere and in the Residence as a result of the window renovation.

83. As a result of Defendants' negligence, lead-based paint dust was disbursed into the air and onto surfaces in the Menericks' home outside the areas where Defendants were working.

84. The Menericks have been forced to undertake costly lead abatement work.

85. Upon medical advice and advice of the Virginia Department of Health, the Menericks have been forced to move out of the home until the lead abatement process has been completed.

12

86.    Defendants' negligent work caused the release of lead dust and debris and damaged the Menerick's property.

87.    As a direct and proximate result of Defendants' negligence, the Menericks suffered property damages, and Defendants are liable for all property damages caused thereby.

### COUNT III – NEGLIGENCE PER SE – VIOLATION OF FEDERAL STATUTES AND REGULATIONS ON LEAD PAINT (SALEM HERITAGE, GREG HUNTER, and MATT McFATTER)

88.    Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-87 above.

89.    Federal and state statutes and regulations set forth standards for the manner, method and practices to be employed in the renovation and restoration of older houses.  15 U.S.C. § 2681 et seq.; 40 C.F.R. § 745.80 et seq.; Virginia Code § 54.1-500 et seq.; 18 V.A.C. 15-30-10 et seq.

90.    Defendants were obligated under federal and state law to obtain certifications and follow protocols before undertaking the window restoration work at the Residence. *Id.*

91.    Defendants were specifically obligated to become certified to undertake renovation work at the Residence.

92.    Defendants were further obligated to follow specific practices to avoid dispersal of lead paint and lead laced dust during the renovation.

93.    Defendants failed to obtain the appropriate licensure.

13

94.     Defendants failed to follow lead safety protocols applicable to home renovators.

95.     Defendants' failure to comply with federal law resulted in dispersal of lead paint and lead dust throughout the Resident and damaged Plaintiff's property.

96.     Defendants' actions have resulted in costly lead remediation work in the Residence.

97.     Defendants' breach of duty imposed by statutes and regulations governing lead abatement work have forced the Plaintiffs' to relocate from the Residence pending completion of remediation work.

98.     As a direct and proximate result of Defendants' violatons, Plaintiffs have suffered property damages, and are entitled to recover damages caused by Defendants' failure to comply with federal and state law governing renovation and restoration work in older homes.

**COUNT IV – NEGLIGENCE PER SE – VIOLATION OF VIRGINIA CODE ANNOTATED § 54.1-1100 ET SEQ. AND 18 V.A.C. 50-22-260 (SALEM HERITAGE, GREG HUNTER, and MATT McFATTER)**

99.     Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-98 above.

100.    In Virginia, it is unlawful for any individual or business entity not licensed in the Commonwealth of Virginia as a contractor to perform construction work.

14

101.    The purpose of Virginia's contractor licensing statutory scheme is to protect the public from inexperienced, unscrupulous, irresponsible, and incompetent contractors.

102.    Virginia requires contractors engaging in residential contracting to make use of legible written contracts that specify the terms and conditions of the work to be performed.

103.    Upon information and belief, Salem Heritage was not licensed to contract to perform construction work in the Commonwealth of Virginia.

104.    Upon information and belief, Hunter, director/manager of Salem Heritage, was not licensed to perform construction work or direct others to perform renovation and restoration construction work in the Commonwealth of Virginia.

105.    Upon information and belief, McFatter, assigned by Defendant to manage the instant project, was not licensed to perform construction work or direct others to perform renovation and restoration construction in the Commonwealth of Virginia.

106.    Defendants represented that they were qualified and licensed to undertake home renovation work in the Commonwealth of Virginia.

107.    In undertaking the Menericks' window renovation and restoration, Defendants violated governing Virginia law.

108.    The Menericks are consumers whom the contracting statute was enacted to protect.

Abingdon: 1200474-1

109.    As a direct and proximate result of the acts and omissions of Defendants, the Menericks have suffered property damages, and they are entitled to relief based on Defendants' violation of Virginia law.

## COUNT V – FRAUD
### (SALEM HERITAGE, GREG HUNTER, and MATT McFATTER)

110.    Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-109 above.

111.    Defendants represented that they were qualified to undertake the window renovation and restoration project and that they were capable of performing the work consistent with governing state and federal law.  These representations were made knowingly and intentionally, with knowledge of their falsity.

112.    The Menericks relied upon Defendants' representations in allowing renovation and restoration work to commence in the Residence.

113.    Defendants did not possess the requisite qualifications necessary to undertake the window renovation and restoration project.

114.    The Defendants failed to take any steps to mitigate the hazards they created when they disturbed lead paint, thereby damaging Plaintiff's property.

115.    The Defendants' work resulted in extensive lead exposure in the residence and necessary abatement.

116.    As a direct and proximate result of the Defendants' fraudulent acts, misrepresentations, and omissions, the Menericks have suffered property damages and made payments not owed for work performed by Defendants.

16

## COUNT VI – VIOLATION OF THE VIRGINIA
## CONSUMER PROTECTION ACT
### (SALEM HERITAGE)

117.    Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-116 above.

118.    Salem Heritage is a supplier of services as defined by the Virginia Consumer Protection Act.  Virginia Code § 59.1-196 et seq.

119.    The Menericks are persons covered by protections set forth in the Virginia Consumer Protection Act.

120.    Suppliers are obligated to refrain from certain prohibited conduct as set forth in the Act.

121.    Suppliers are prohibited from misrepresenting the standard and quality of services being rendered.

122.    Suppliers are prohibited from violating certification and licensing requirements.

123.    Individual actions may be brought against suppliers who violate the Virginia Consumer Protection Act.

124.    Salem Heritage contracted in the Commonwealth of Virginia without the required licenses.

125.    Defendant deceived the Menericks by representing that it was qualified to undertake construction work in the Commonwealth of Virginia.

Abingdon: 1200474-1

126.    Defendant misrepresented the standard and quality of work being undertaken at the Residence.

127.    Defendant specifically misled the Menericks regarding its ability to safely undertake the work to be performed.

128.    The Menericks have been harmed by Defendant's misrepresentation actions and breaches, which are a violation of the Virginia Consumer Protection Act.

129.    As a direct and proximate result of the Defendant's violations, the Menericks are entitled to damages, attorney's fees, and costs under the Virginia Consumer Protection Act.

## COUNT VII – PUNITIVE DAMAGES
### (SALEM HERITAGE, GREG HUNTER, and MATT McFATTER)

130.    Plaintiffs hereby adopt and incorporate the allegations contained in Paragraphs 1-129 above.

131.    Defendants undertook the window renovation project without following required and recognized lead safety practices.

132.    Defendants were aware of the risks posed by lead paint when agreeing to undertake the window restoration project in an older home.

133.    Defendants were aware that lead safety practices must be implemented to mitigate dangers associated with lead paint.

134.    Defendants knowingly failed to follow lead safety practices in undertaking the window renovation project.

Abingdon: 1200474-1

135.   Defendants knew that failing to follow lead safety practices would contaminate and damage the Residence.

136.   Defendants' actions demonstrate willful and wanton conduct, and a conscious disregard for the rights of the Menericks.  Plaintiffs have suffered damages as a direct and proximate result of Defendants' actions, omissions, breaches, and failure to follow lead safety practices.  Accordingly, the Menericks are entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for the following relief:

(a)    Compensatory damages in the amount of $400,000;

(b)     Punitive Damages in the amount of $350,000;

(c)    All remedies provided under the Virginia Consumer Protection Act, including an award of costs and attorney's fees;

(d)    An injunction, preliminary and permanent, enjoining the Defendants, individually, collectively, and as a business entity, from any continued violation of state and federal law governing licensure, qualifications, and certifications;

(e)    Such other relief, legal or equitable, that may be provided under Virginia and Federal statutory law and regulations.

A JURY TRIAL IS DEMANDED.

19

CHRISTOPHER MENERICK and
AMY MENERICK

By Counsel


W. Bradford Stallard
  VSB No. 28149
Wade W. Massie
  VSB No. 16616
PENNSTUART
P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621
bstallard@pennstuart.com
wmassie@pennstuart.com


By _/s/ W. Bradford Stallard_____
       W. Bradford Stallard


## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2023, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system.


_/s/ W. Bradford Stallard_____
W. Bradford Stallard

Abingdon: 1200474-1