# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CHRISTOPHER MENERICK, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:23CV00010 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SALEM HERITAGE, LLC, ET AL.,** ) | Judge James P. Jones |
| ) | |
| Defendants. ) | |

*W. Bradford Stallard and Wade W. Massie,* PennStuart, *Abingdon, Virginia, for Plaintiffs; Shawn A. Voyles and Paul R. Schmeding,* McKenry Dancigers Dawson, P.C., *Virginia Beach, Virginia, for Defendant Salem Heritage, LLC.*

The plaintiffs bring this lawsuit seeking damages for breach of contract, negligence, fraud, and for a violation of the Virginia Consumer Protection Act in relation to the renovation and restoration of the plaintiffs' home. Before the court is a Motion to Dismiss certain of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, I will deny the motion.

I.

I must consider the well-pleaded facts alleged in the Complaint as true in determining the Motion to Dismiss.

The Complaint alleges that defendant Salem Heritage, LLC (Salem Heritage or the Company) — a North Carolina entity that is in the business of renovating and

restoring windows, shutters, and doors — caused the release and dispersal of lead paint residue and dust in the plaintiffs' home. The plaintiffs moved out of the residence on the advice of a doctor, after tests revealed elevated levels of lead.

The plaintiffs own a home in Abingdon, Virginia, "built in or around 1828." Compl. ¶ 14, ECF No. 1. Because of its age, the plaintiffs feared the home contained toxic substances, including lead. In December of 2021, the plaintiffs contacted Salem Heritage about renovating and restoring the windows. Greg Hunter (Hunter), a member and manager/director of Salem Heritage, met with the plaintiffs on more than one occasion to solicit and secure their business. The plaintiffs and Hunter discussed the age and condition of the home, and the plaintiffs' concerns about exposing their family to toxic substances, including lead paint, given the age of the home. Hunter represented that the Company's employees were qualified to perform the work safely and that he would carefully supervise them. It was not disclosed to the plaintiffs that they were not licensed to work or conduct business in Virginia and that they did not possess the requisite lead certifications. The parties agreed that the project would include restoring, repairing, priming, and painting the windows. Salem Heritage began the renovations on or about July 2022. The plaintiffs paid Salem Heritage for the work in two installments. They made the first payment of $17, 771.28 on July 29, 2022, and the second payment for $10,477.04 sometime after August 12, 2022.

On August 31, 2022, a blood test revealed that one of the plaintiffs' children had high lead levels. On the advice of a pediatrician, the plaintiffs moved out of the home. Salem Heritage claimed to have completed the work on September 7, 2022. The next day a Lead Risk Assessor with the Virginia Department of Health performed an Environmental Intervention Blood Lead Investigation (EIBLI). The EIBLI showed lead hazards were in the home. The plaintiffs allege they have taken efforts to mitigate the damage, and they have received an estimate of $82,866 from a firm licensed and certified to conduct lead abatement.

In the Motion to Dismiss, Salem Heritage challenges the sufficiency of "Count III – Negligence Per Se — Violation of Federal Statutes and Regulations on Lead Paint," "Count IV – Negligence Per Se — Violation of Virginia Code Annotated § 54.1-1100 et seq. and V.A.C. 50-22-260," "Count V – Fraud," "Count VI – Violation of the Virginia Consumer Protection Act," and "Count VII – Punitive Damages," leaving only "Count I – Breach of Contract" and "Count II –Negligence" untouched.

The parties have fully briefed the issues, and the motion is ripe for disposition.[1]

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

II.

The court has subject-matter jurisdiction based on the diversity of citizenship and amount in controversy. 28 U.S.C. § 1332. In accord with *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938), a federal court exercising diversity jurisdiction must apply the substantive law of the highest court of the state in which it sits. *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999). I will apply substantive Virginia law, which the parties appear to agree should apply. Otherwise, federal procedural pleading rules will apply. *Rowland v. Patterson*, 852 F.2d 108, 111 (4th Cir. 1988).

To survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Resolution of a motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks and citations omitted). If the factual content enables a court to draw reasonable inferences that the defendant is liable, then the claim is plausible. *Ashcroft*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* The alleged facts must be sufficient to meet all the elements of a claim. *Bass v. E.I. Dupont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003).

III.

A.

The defendant contends that Counts III and IV fail to state a claim upon which relief can be granted. Count III alleges that the defendants violated 15 U.S.C. § 2681 *et seq.* (failing to comply with provisions governing lead reduction exposure); 40 C.F.R. § 745.80 *et seq.* (regulating requisite training, certification and work practice standards for residential restoration that involves lead paint); Va. Code Ann. § 54.1-503 (providing Virginia licensure requirements); and 18 Va. Admin. Code § 15-30-10 *et seq.* (2003) (describing procedures and requirements for accreditation of lead-based paint activities training).

I find that the plaintiffs have adequately alleged the elements of negligence per se. To establish the elements of negligence per se, the plaintiff must show (1) that the defendants violated a statute enacted for public safety; (2) that the plaintiff belongs to a class of people the statute is intended to protect, and that the statute was crafted to protect against the type of harm alleged; and (3) that the statutory violation was the proximate cause of the plaintiff's injury. *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 872 (Va. 2011). The first two elements are issues of law for the court while the third is a factual issue for the trier of fact. *Id.*

In Count III, the Complaint invokes the federal statutes enacted in the Residential Lead-Based Paint Hazard Reduction Act of 1992 (Act). *Nat'l Multi*

*Hous. Council v. U.S. EPA*, 292 F.3d 232, 233 (D.C. Cir. 2002). The Act "directs EPA and . . . (HUD to take various actions to protect the public from any lead-based paint hazard by reducing such hazard." *Id.* The EPA promulgated a rule requiring renovation firms to be trained and certified in the safety practices for working with lead. 40 C.F.R. § 745.80. "The purposes of this chapter [include] -- (1) to develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible;" and "(7) to educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. § 4851a (1), (7). Based on the allegations of the Complaint, the plaintiffs are in the class of persons that the statutes were enacted to protect from the type of harms they allegedly suffered.

B.

In Count IV, the plaintiffs allege that the defendants violated the Virginia licensing statute clearly enacted for the purpose of protecting the public from unqualified contractors. The plaintiffs assert that they are in the class of people the statute was designed to protect and that they suffered property damage as a proximate cause of the defendants acts and omissions. The plaintiffs have adequately pleaded negligence per se for both counts.

The plaintiff may bring alternative theories of relief under the Federal Rules of Civil Procedure. Salem Heritage argues that once a plaintiff brings a breach of

contract claim, then the plaintiff cannot add a tort claim under Virginia's source-of-duty rule.[2] Under the Federal Rules of Civil Procedure, the plaintiff may bring alternative theories of relief. In a federal pleading, a party can plead alternative theories of recovery set out in separate counts and based on alternative facts even if inconsistent and even if the party may not prevail on the alternative theories. Fed. R. Civ. P. 8(d); *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. 2023).

C.

Counts V and VI also do not fail as a matter of law. Salem Heritage asserts that the plaintiffs failed to plead sufficient facts to support a cause of action for fraud in Count V. Relying on that assertion, the defense argues that the plaintiffs' claim for violation of the Virginia Consumer Protection Act (VCPA) in Count VI must be dismissed because the plaintiff must allege a fraudulent act to state a claim under the VCPA.

---

[2] This rule provides that fraudulent performance of a contract does not create a fraud claim because the source of the duty comes from the contract, not the tort. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). The Supreme Court of Virginia has also recognized that where the contractual relationship arises from fraud in the inducement a party can show both breach of contract and a tortious breach of duty. *Id.* at 347–48 (citing the *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988)).

Federal Rules of Civil Procedure 9(b) imposes heightened pleading standards for fraud, requiring a claimant to plead the circumstances of the fraud with particularity. Specifically, the claimant must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted) (Rule 9(b) requires the plaintiff plead "the who, what, when, where, and how of the alleged fraud." (internal quotation marks and citations omitted)). Failing to comply with the rule's requirement constitutes a failure to state a claim. *Harrison v. Westinghouse Savannah River Co*., 176 F.3d. 776, 783 n.5. However, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* at 784.[3]

---

[3] "There is a split in authority as to whether a litigant must comply with the heightened pleading requirements of Rule 9(b) in cases of fraudulent concealment or omission." *S. USA Life Ins. Co. v. Foster*, No. 7:18-cv-590, 2019 WL 2110598, at *4 (W.D. Va. 2019). Other federal courts have relaxed the application of Rule 9(b) where the fraud claim results from concealment or omission of a material fact, as opposed to an affirmative misrepresentation, because omissions are difficult to plead with particularity. *Compare Addi v. Corvias Mgmt.-Army, LLC*, No. ELH-19-3253, 2020 WL 5076170, at *19 (D. Md. Aug. 27, 2020) (less strictly applied to fraud by concealment or omission because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); *In re MI Windows & Doors, Inc. Prods. Liab. Litig*., 914 F. Supp. 2d 744, 753 (D.S.C. 2012) (applied more liberally in fraud by silence) (internal quotation marks and citations

The allegations in the Complaint plausibly establish fraud in the inducement where the contractual relationship results from affirmative misrepresentations about the defendants' qualifications and material omissions regarding licensure and certifications. The allegations adequately inform Salem Heritage with enough specifics about the particular circumstances at issue, enabling it to prepare a defense. The pleadings meet the heightened pleading standards.

### D.

The defendants seek to strike the claim for punitive damages in Count VII, contending that there is no support in Virginia law for an independent cause of action for punitive damages. While it is true that there is not a stand-alone cause of action for punitive damages and that a plaintiff cannot claim punitive damages for a breach of contract, the court need not deny the requested relief where the plaintiff has sufficiently alleged an injury and a willful tort independent of a breach of contract claim. *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337–38 (E.D. Va. 2004) (citing *Kamlar Corp. v. Haley*, 299 S.E.2d 514 (Va. 1983)). *RMA Lumber, Inc. v. Pioneer Mach., LLC*, No. 6:08-CV-00023, 2008 WL 4693564, at *9 (W.D. Va. Oct. 24,

---

omitted); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195-96 (M.D.N.C. 1997) (difficult to plead fraud by omission with particularity) *with Koski v. Carrier Corp.*, 347 F. Supp.3d 1185, 1196 (S.D. Fla. 2017) (fraudulent concealment claim subject to heightened pleading requirements).

2008) ("[T]he Court will not deny a form of requested relief simply because of poor formatting of the pleadings.").

IV.

For the reasons stated, I find that the plaintiffs have sufficiently pleaded the claims set forth in Counts III, IV, V, and VI.  I will construe Count VII as a prayer for relief rather than an independent cause of action.  Accordingly, it is **ORDERED** that the defendant's Motion to Dismiss, ECF No. 12, is DENIED.

ENTER:  June 5, 2023

/s/  JAMES P. JONES
Senior United States District Judge