IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
August 29, 2024
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
          DEPUTY CLERK

| | |
|---|---|
| **CHRISTOPHER MENERICK, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:23CV00010 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SALEM HERITAGE, LLC, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |

*W. Bradford Stallard and Wade W. Massie,* PENNSTUART, *Abingdon, Virginia, for Plaintiffs; Shawn A. Voyles and Paul R. Schmeding,* MCKENRY DANCIGERS DAWSON, P.C., *Virginia Beach, Virginia, for Defendants.*

Christopher and Amy Menerick hired Salem Heritage, LLC (Salem Heritage or the Company) — a North Carolina entity in the business of renovating and restoring windows, shutters, and doors — to restore the windows in a pre-Civil War residence in Abingdon, Virginia, that the Menericks had recently purchased. Because of its age, the structure likely contained lead-based paint (LBP), a hazardous substance.[1] The Menericks claim in this lawsuit against Salem Heritage and two of its employees that the Company's failure to competently perform its work caused

---

[1] Spending time or living in homes with LBP can result in harm if the paint breaks down and forms dust-borne lead particles, which then can be breathed or swallowed. Lead exposure may cause high blood pressure and brain, kidney, and reproductive health issues in adults and may be a carcinogen. Children younger than six are especially vulnerable to lead poisoning, which can affect mental and physical development. U.S. Dep't of Health & Human Servs., Agency for Toxic Substances & Disease Registry, *Lead - ToxFAQs™ for Lead* (2020), https://www.atsdr.cdc.gov/toxfaqs/tfacts13.pdf. While these facts are not all contained in the present record, I can take judicial notice of them. Fed. R. Evid. 201.

the release and dispersal of LBP dust into the house. Following discovery, the defendants have moved for summary judgment, primarily asserting that the Menericks cannot prove that the Company's actions proximately caused the damages claimed. Their argument in this regard is that the sole expert witness for the Menericks cannot opine as to possible alternative sources of the contamination.

Alternatively, and for the same reason, the Company moves to preclude the testimony at trial of the expert witness in question.

The issues have been briefed and argued and are ripe for decision. Based upon the present record and my consideration of the parties' submissions, I find that both the Motion for Summary Judgment and the Motion to Exclude must be denied.

I.

The court has subject-matter jurisdiction based on the diversity of citizenship and amount in controversy. 28 U.S.C. § 1332. A federal court exercising diversity jurisdiction must apply the substantive law of the highest court of the state in which it sits. *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999). Otherwise, federal procedural rules will apply. *Rowland v. Patterson*, 852 F.2d 108, 111 (4th Cir. 1988).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary

judgment, the court must view the evidence and justifiable inferences therefrom in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

In regard to the Motion to Exclude, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic analytical framework for determining the admissibility of expert testimony. Under *Daubert*, the court acts as a gatekeeper by ensuring that any expert testimony "is not only relevant, but reliable." *Id.* at 589. "The trial judge's general 'gatekeeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (cleaned up). The trial court's inquiry into admissibility is "a flexible one" and the court's analysis will "depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks and citations omitted). More generally, cases after *Daubert* have shown that

"the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

The reality is that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

Under Virginia law, a proximate cause of an event is an act or omission that in natural and continuous sequence produces the event, and without which that event would not have occurred. *Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 731 (Va. 2013) (explaining that proximate cause is a necessary antecedent of injury). Under Virginia law, there may be more than one proximate cause of an injury. *Williams v. Le*, 662 S.E.2d 73, 77 (Va. 2008). It is not required that a plaintiff "'show that an act, claimed to have been the proximate cause of a certain result, was the only cause.'" *Schools v. Walker*, 47 S.E.2d 418, 423 (Va. 1948) (quoting *Chesapeake & O. Ry. Co. v. Wills*, 68 S.E. 395, 397 (Va. 1910)).

II.

The following are undisputed material facts presented by the submissions of the parties, or where adequately disputed, resolved against the moving parties.

The home in question is thought to have been originally built in 1827 or 1828. The property includes three out-buildings near the home. The Menericks have three young children, and Mrs. Menerick was pregnant with their third child when they moved in after the purchase. At the closing on March 4, 2021, the seller provided the Menericks with a disclosure, as required by law, that he did not know of any lead-based risk in the home.

The Menericks did not seek an investigation of any possible lead hazards, although they assumed that LBP would be present because of the age of the house. They did obtain a general home inspection by a licensed inspector. His report prior to the closing recommended among other things, repair of windows with cracked glass and broken counter-balance cords. He also reported that in the interior of the home there were "[m]any areas with peeling paint at walls and trim – recommend repair/testing." Defs.' Brief Supp. Mot. Ex. 6, at 17, ECF No. 41-6. However, the Menericks had no repair work or testing done prior to Salem Heritage's involvement.

After the Menericks had lived in the house for several months, they sought an contractor for renovation of the home's windows, including new glass where needed and other refurbishing, in order to make the house more energy efficient. Though the internet, they hit upon the defendant Salem Heritage, which had represented itself as renovating windows in older homes.

In April of 2022, an employee of the Company, defendant Greg Hunter, visited the home to determine the scope of the project. He represented to the Menericks that most of the restoration work on the windows would be done outside of the home and that any dust produced would be "minimal." Mem. Opp'n Ex. 1, Amy Menerick Aff. 2, ECF No. 44-1. He also advised them that "the risk with lead paint would be minimal and that [the Menericks] did not need to cover anything, take anything down, or vacate the property during the restoration work." *Id*. Another employee, defendant Matt McFatter, made similar representations. The Menericks were not advised that Salem Heritage did not have a Virginia license.

Based upon these promises, the Menericks entered into an oral contract with the Company to perform the work. The restoration started in July of 2022. However, in spite of the fact that there was no dust in the house when it was purchased, the work generated a "massive amount of visible dust." Br. Supp. 102-03, ECF No. 41-1. The Menericks would clean the dust off, and it would return. The workers walked through the home without protective gear, such as booties, to use the bathroom. A worker was observed by Mr. Menerick scraping and sanding window frames in the yard with the windows open, producing paint dust that entered the house. *Id*. Ex. 2, Christopher Menerick Aff. 5, ECF No. 44-2.

On August 31, 2022, while work on the windows by Salem Heritage was ongoing, a blood test revealed that the couples' youngest child, still an infant, had a

positive lead level. On the advice of their pediatrician, the Menericks immediately moved out of the home and stopped the work. The pediatrician also advised the local health officials of this finding. A lead risk assessor with the Virginia Department of Health performed an Environmental Intervention Blood Lead Investigation (EIBLI). The EIBLI report showed lead hazards were in the home, including "Dust Lead Hazards" on the ground level floors and "window ledges/sills" of numerous rooms. *Id.* Ex. 12, at 3, ECF No. 41-11. As a result, the plaintiffs were required by the Virginia Department of Health to hire at their expense a firm licensed and certified to conduct lead abatement of the whole house.

The Menericks have obtained an expert, Chris J. Chapman, a licensed LBP inspector and risk assessor. Mr. Chapman is of the opinion that the lead contamination in the home was likely caused by Salem Heritage's work. He found that the Company had violated various Environmental Protection Agency regulations protecting against the hazards of lead in construction, which violations resulted in this contamination.

### III.

- The Complaint asserts the following causes of action:
- Count I against Salem Heritage for breach of contract;
- Count II against all three defendants for negligence;
- Count III against all three defendants for negligence per se for violation of lead paint statutes and regulations;

- Count IV against all three defendants for negligence per se for violation of licensing laws;

- Count V against all three defendants for fraud; and

- Count VI against Salem Heritage for violation of the Virginia Consumer Protection Act.

Compl., ECF No. 1.

The grounds for summary judgment asserted as to all of these causes of action are the same — that without the testimony of an expert, there is inadequate proof of the cause of the alleged lead contamination or any damages resulting from it, and that expert Chapman's opinion as to causation is insufficient because he has not considered any other alternative causes for the LBP dust in the home. The defendants assert that a Chapman "chose to ignore a material alternate cause — the peeling and deteriorating paint throughout the home in which Plaintiffs lived for 18 months before Salem Heritage began its work." Reply Br. 1, ECF No. 47.

I disagree with this interpretation of Mr. Chapman's expected testimony. In fact, he opines that "the widespread dispersion of dust and debris containing lead caused by Salem Heritage . . . would have required an abatement regardless of any pre-existing condition of the Residence." Mem. Opp'n Ex. 4, Chapman Aff. ¶ 7, ECF No. 44-4. Moreover, he states under oath that

> [t]he highly elevated levels of lead yielded in some of the testing by the health department are more likely than not a result of the more recent activities of Salem Heritage. The higher values would indicate that lead

> dust was at a higher level than would have been normally be [sic] expected present if it were simply dust arising from the existing normal conditions. This especially true since, to my knowledge, the Menericks did nothing to disturb the lead paint that would have been present in the house prior to Salem Heritage's arrival and disturbance activities.

*Id.* ¶ 11. Of course, at trial the plaintiffs' witnesses, including that of their expert, will be subject to cross examination and any contrary evidence, but on this record I am unable to grant summary judgment.

For the same reasons, I will deny the defendants' motion to exclude Mr. Chapman's opinion testimony.

IV.

The defendants also assert that the Menericks' negligence claim is barred by their own contributory negligence and assumption of the risk. Such defenses are normally matters for the jury. In addition, as argued by the plaintiffs, it has not been indisputably shown at this point that had the Menericks sought a lead investigation earlier, it would have shown the need for abatement prior to the defendants' work.

Finally, the defendants request that the court strike any claim for punitive damages. However, based on the present record, I will not preclude that remedy at this point.[2]

---

[2] I have also considered other passing grounds asserted by the defendants but find them unavailing.

V.

For the reasons stated, it is **ORDERED** that the Defendants' Motion for Summary Judgment, ECF No. 40, and the Defendants' Motion to Exclude Chris Chapman, CIH, ECF No. 38, are DENIED.

ENTER: August 29, 2024

/s/ JAMES P. JONES
Senior United States District Judge